**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | |
|---|---|
| **ROBERT HALPIN,** | Bankruptcy No. 18-22057-CMB |
| Reputed Debtor. | Involuntary Chapter 7 |
| **ROBERT HALPIN,** | Document No. |
| Movant, | Related to Doc. No. 1 |
| vs. | |
| **A.G. CULLEN CONSTRUCTION, INC., PAUL CULLEN, RICHARD KALSON and BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP,** | |
| Respondents. | |

**MOTION TO DISMISS INVOLUNTARY CHAPTER 7
PETITION PURSUANT TO BANKRUPTCY RULE 1011 AND FOR
<u>JUDGMENT AGAINST THE RESPONDENTS PURSUANT TO 11 U.S.C. 303</u>**

**AND NOW**, the Movant, Robert Halpin, by his attorneys, Robert O Lampl, James R. Cooney, David L. Fuchs, Ryan J. Cooney and Sy O. Lampl, file the within Motion to Dismiss Involuntary Chapter 7 Petition Pursuant to *Bankruptcy Rule 1011* and for Judgment Against Respondents Pursuant to *11 U.S.C. 303:*

**The parties:**

1.   The instant Involuntary Chapter 7 Case was commenced pursuant to an Involuntary Petition filed at Document No. 1 by A.G. Cullen Construction, Inc. (A.G. Cullen), Richard Kalson (Kalson) and Benesch, Friedlander, Coplin & Aronoff, LLP (the Benesch firm).

2.   The Movant is Robert Halpin (Halpin), an adult individual who resides in

1

Glen Ellyn, Illinois.

3. Lori Halpin is an adult individual who resides in Glen Ellyn, Illinois. Lori Halpin is the wife of Robert Halpin.

4. Burnham Partners, LLC (Burnham Partners), is an Illinois Limited Liability Company. Robert Halpin formed Burnham Partners in 1998 to develop real estate projects.

5. Burnham Partners has developed several real estate projects throughout the country.

6. Robert Halpin is the sole manager and member of Burnham Partners. Lori Halpin is neither a manager nor a member of Burnham Partners, nor is she an employee of Burnham Partners.

7. Westgate Ventures, LLC (Westgate) is a Delaware Limited Liability Company.

8. Burnham Partners formed Westgate in June of 2005 as a single asset limited liability company to develop a warehouse project in Big Beaver, Pennsylvania.

9. The sole members of Westgate are Burnham Partners and Felix Fukui, an architect in Pittsburgh.

10. Burnham Partners is the manager of Westgate. Lori Halpin is neither a manager nor a member of Westgate, nor is she an employee of Westgate.

11. The Respondent, A.G. Cullen, is a Pennsylvania corporation with offices in Pittsburgh, PA. A.G. Cullen is engaged in the construction industry. The Respondent, Paul Cullen (Cullen), is the Vice President and corporate representative of A.G. Cullen.

12. The Respondent, Kalson, is an adult individual with offices at 41 S. High

Street, Suite 2600, Columbus, Ohio 43215.

13. The Respondent, the Benesch firm, is a law firm with offices at 41 S. High Street, Suite 2600, Columbus, Ohio 43215.

14. At all times material hereto, Kalson was acting on behalf of and as agent for the Benesch firm.

**The Project:**

15. Sometime prior to July 1, 2005, Westgate made arrangements to acquire approximately 3.5 acres of land located in Big Beaver, Pennsylvania and known as the Westgate Business Park. Westgate intended to construct a warehouse and distribution project at the Park.

16. On July 1, 2005, Robert and Lori Halpin extended a loan to Westgate in the amount of $175,000.00. In order to memorialize the transaction, Westgate executed a Note in favor of the Halpins. The Note was payable "upon the sale of the property commonly known as approximately a 3.5 acre parcel in Big Beaver, Pennsylvania and in the Westgate Business Park." In order to fund the loan, the Halpins were required to take out a second mortgage on their home.

17. Burnham Partners and Westgate entered into a Development and Asset Management Agreement (the Development Agreement) on July 1, 2005.

18. Pursuant to the Development Agreement, Burnham agreed to provide development services for Westgate, including the purchasing of the necessary land, hiring of architects and engineers, obtaining bank financing, obtaining government approvals, hiring a contractor, overseeing construction, leasing the building and the ultimate sale of the building.

19.     Westgate agreed to pay Burnham Partners a Development Fee of $400,000.00.

20.     On November 17, 2005, more than 4 months after the Halpin Loan and the Development Agreement with Burnham Partners, Westgate and A.G. Cullen entered into a Standard Form of Agreement between Owner and Construction Manager (the Construction Contract).

21.     A.G. Cullen never asked Robert Halpin to personally guaranty Westgate's performance under the Construction Contract, although it clearly could have done so.

22.     No one at A.G. Cullen ever met or spoke to Lori Halpin in connection with the Project or the Construction Contract.

23.     The Construction Contract specifically required the Architect to approve A.G. Cullen's applications for payment before Westgate was required to pay them.

24.     A.G. Cullen began construction on the facility and Burnham Partners oversaw the construction on a monthly basis.

25.     A.G. Cullen submitted monthly applications to the Architect, Felix Fukui, for approval as required by the Construction Contract.  All of A.G. Cullen's pay applications which were approved by the Architect were paid by Westgate.

26.     Burnham Partners relied exclusively on Felix Fukui for payment decisions on the project. In fact, Westgate's lender, S & T Bank, would not fund A.G. Cullen's pay applications unless they were approved by the Architect.

**The dispute:**

27.     In April of 2005, a dispute arose among Westgate, Cullen and the Architect, Felix Fukui. Cullen asserted that the Architect was wrongfully refusing to approve his pay

applications.

28. Neither Westgate nor Burnham Partners believed that Cullen's claim had any credibility for several reasons:

A. A.G. Cullen had told Robert Halpin that it had underbid the job by more than $200,000.00.

B. A large portion of the work included alleged charges for extra work which was not covered by the contract. A.G. Cullen submitted approximately $200,000.00 in change orders during the first 2 weeks that it was on the job.

C. By the time that A.G. Cullen walked off the job, it had submitted in excess of $400,000.00 in change orders. This is more than a significant amount for a contract that totaled approximately $2,000,000.00.

D. A.G. Cullen did not even finish the work required under its contract, but instead walked off the job. As a result, Westgate was required to expend substantial funds to others to complete the project.

E. Finally, Robert Halpin testified that he felt that Burnham and Westgate were entitled to rely on the Architect's decisions regarding payments.

**The sale:**

29. After extensive marketing, Burnham Partners was able to locate a buyer for the project, 133 Westgate, LLC.

30. A closing on the sale was held on April 5, 2007.

31. The sales proceeds were used to pay the construction mortgage with S & T Bank and to pay various costs and expenses.

32. In addition, the following 2 payments were made from the sales proceeds:

A. $120,000.00 was paid to Robert Halpin and Lori Halpin, representing the balance due on the loan that the Halpins had extended to Westgate on July 1, 2005.

B. $400,000.00 was paid to Burnham Partners representing the Development Fee that Burnham Partners had earned under the Development Agreement with Westgate entered on July 1, 2005.

**The AAA Arbitration proceedings:**

33. The Construction Contract between A.G. Cullen and Westgate provided that any disputes between the parties would be submitted to arbitration before the American Arbitration Association (the AAA).

34. Pursuant to the same, A.G. Cullen filed a demand for arbitration against Westgate with the AAA which was docketed at No. 55-110M00169-06.

35. On September 7, 2007, more than 5 months after the sale of the project, the Arbitrator entered an Award, in favor of A.G. Cullen and against Westgate, in the amount of $448,406.87.

36. A.G. Cullen filed a Petition to Confirm the Arbitration Award in the Court of Common Pleas of Allegheny County at GD-07-022414.

37. By Order of Court entered on November 27, 2007, the Award was reduced to judgment. Pursuant to the same, judgment was entered in favor of A.G. Cullen and against Westgate in the amount of $457,416.37.

**The Allegheny County case:**

38. Following entry of the judgment at GD-07-022414, A.G. Cullen filed a Complaint in Civil Action against Burnham Partners, L.P., Lori Halpin, Robert Halpin and

Westgate in the Court of Common Pleas of Allegheny County at GD-08-000866.

39. In its Complaint, A.G. Cullen asserted, among other things, that:

A. Burnham Partners, Lori Halpin and Robert Halpin are "alter egos" of Westgate (Paragraphs 30 through 39);

B. Westgate, Burnham Partners, Lori Halpin and Robert Halpin engaged in the "fraudulent transfer" of certain assets (Paragraphs 30 through 39);

C. As "alter egos" of Westgate, Burnham Partners, Lori Halpin and Robert Halpin are liable to A.G. Cullen for "breach of contract" (Counts 1, 3 and 5);

D. As "alter egos" of Westgate, Burnham Partners, Lori Halpin and Robert Halpin are liable to A.G. Cullen under the Pennsylvania Contractor and Subcontractor Payment Act (Counts 2, 4 and 6); and

E. Westgate, Burnham Partners, Lori Halpin and Robert Halpin are liable to A.G. Cullen under the Pennsylvania Uniform Fraudulent Transfer Act (Counts 7, 8 and 9).

40. Burnham Partners, Lori Halpin and Robert Halpin filed preliminary objections to A.G. Cullen's Complaint, asserting, among other things, that the Court lacked personal jurisdiction over defendants since they did not have sufficient minimum contacts with the Commonwealth of Pennsylvania.

41. Following the same, the parties engaged in discovery on the issue of personal jurisdiction.

41. By his Order entered on October 10, 2008, the Honorable Paul F. Lutty, Jr., granted the preliminary objections and dismissed A.G. Cullen's claims, finding that Burnham Partners, Lori Halpin and Robert Halpin did not have sufficient minimum

contacts with the Commonwealth of Pennsylvania.

42.  No appeal was taken from Judge Lutty's Order dismissing the claims of A.G. Cullen.

**The Westgate bankruptcy proceedings:**

43.  On January 11, 2012, Westgate filed a Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania at No. 20111-CMB.

44.  A.G. Cullen filed a claim against Westgate and also filed a Motion for Relief from the Automatic Stay with the Bankruptcy Court.

45.  On March 20, 2012, the Honorable Carlota M. Bohm granted A.G. Cullen's Motion in part as follows:

> The automatic stay is lifted to permit A.G. Cullen Construction, Inc. (Cullen) to pursue the litigation against non-debtor parties pending in the Circuit Court of Cook County, Illinois referred to in the Debtor's Motion.

46.  On December 7, 2012, the Court Appointed Trustee, Jeffrey J. Sikirica, administratively closed the bankruptcy case.

47.  On December 20, 2016, A.G. Cullen filed a Motion to Reopen the Bankruptcy Case. In its Motion, A.G. Cullen asserted, among other things, that:

> 2.  Since the Debtor's case was closed, A.G. Cullen attained a verdict in the amount of $690,410.03 plus against Burnham Partners, LLC, Robert Halpin and Lori Halpin.
>
> 3.  Pursuant to an October 11, 2016 Order of Judge

Case 18-22057-CMB    Doc 11    Filed 07/05/18    Entered 07/05/18 12:08:56    Desc Main
Document    Page 9 of 17

>> Alexander White, of the Cook County, Illinois Circuit Court, that was requested by the non-debtor defendants, permission from the Court is required to allow A.G. Cullen to conduct the asset discovery necessary to deliver the assets of Robert Halpin, Lori Halpin and Burnham Partners to this Court….

**The Cook County of Illinois case:**

48. Following the dismissal of its Complaint in the Court of Common Pleas of Allegheny County at GD-08-000866, A.G. Cullen filed a similar action against Robert Halpin, Lori Halpin and Burnham Partners in Cook County, Illinois at No. 08-L-13121.

49. A non-jury trial on A.G. Cullen's claims was held before the Honorable Vanessa Hopkins, Judge of the Circuit Court of Cook County, Illinois.

50. Following a week-long trial, on July 31, 2012, Judge Hopkins dismissed A.G. Cullen's Complaint and entered judgment in favor of the Defendants, Robert Halpin, Lori Halpin and Burnham Partners.

51. A.G. Cullen filed an appeal from Judge Hopkins' Order to the Illinois Appellate Court, First District, Third Division, which was docketed at No. 1-12-2538.

52. By its Opinion and Order entered on March 11, 2015, the Appellate Court reversed the decision of Judge Hopkins and remanded the case with a direction for entry of judgment in favor of A.G. Cullen.

53. By its Order entered on May 23, 2016, the Honorable Patrick J. Sherlock entered a judgment in favor of A.G. Cullen and against Robert Halpin, Lori Halpin and Burnham Partners in the amount of $662,915.05.

54. Following the judgment, A.G. Cullen filed a Citation to Discover Assets against Robert Halpin, Lori Halpin and Burnham Partners.

55. Robert Halpin, Lori Halpin and Burnham Partners filed a Motion to Quash the Citation, asserting, among other things, that the Citation was never properly served upon them. During these proceedings, the Halpins advised A.G. Cullen and its counsel, Kalson, that they resided at 347 Lorraine Street, Glen Ellyn, Illinois 60137.

56. By his Memorandum Opinion and Order entered on October 24, 2017, the Honorable Alexander P. White quashed the Citation to Discover Assets, based upon his finding that proper service had not been effectuated on the Halpins.

57. A.G. Cullen did not file an appeal from Judge White's Order quashing the Citation to Discover Assets.

### A.     Motion to Dismiss Involuntary Chapter 7 Petition:

58. The Movant hereby incorporates paragraphs 1 through 57 above as if set forth in their entirety.

59. A.G. Cullen initiated the within matter by filing an Involuntary Chapter 7 Petition against Robert Halpin with this Honorable Court on May 21, 2018.

60. The Involuntary Petition was signed by Cullen as the Vice President and corporate representative of A.G. Cullen.

61. The Involuntary Petition was also signed by Kalson and the Benesch firm, as attorneys for A.G. Cullen. Significantly, Kalson and the Benesch firm also represented A.G. Cullen in the prior cases in Allegheny County and in Cook County, as well as in the Westgate bankruptcy case.

62. *Federal Rule of Bankruptcy Procedure 1011* governs responsive pleadings

in involuntary cases. Pursuant to *Rule 1011 (b),* defenses and objections to an involuntary petition "shall be presented in the manner prescribed by Rule *12 F.R.Civ.P.*"

63. Robert Halpin, the Reputed Debtor, hereby asserts that the Respondents have failed to state a claim upon which relief can be granted and requests that the Involuntary Petition herein be dismissed pursuant to *F.R.Civ.P. 12 (b) (6).*

64. Pursuant to *11 U.S.C. 303 (b),* when the reputed debtor has 12 or more creditors, any involuntary petition must be filed by 3 or more creditors.

65. The Reputed Debtor in the present case, Robert Halpin, has more than 12 creditors.

66. Despite the same, the involuntary petition in the present case was filed by only one (1) creditor, A.G. Cullen.

67. Accordingly, the present involuntary petition is contrary to the Bankruptcy Code and must be dismissed by this Honorable Court pursuant to *11 U.S.C. 303.*

68. Pursuant to *11 U.S.C. 303 (h) (1),* the Respondents have the burden of proving that Robert Halpin "is generally not paying such debtor's debts as such debts become due…" In fact, the involuntary petition filed in this case asserts that the debtor, Robert Halpin, "is generally not paying such debtor's debts as such debts become due…" (Document No. 1, paragraph 11).

69. Such assertion is untrue and Respondents will be unable to meet their burden, as Mr. Halpin is, in fact, generally paying his debts as they become due.

70. Based upon the same, the involuntary petition was filed in bad faith and is subject to dismissal by this Honorable Court pursuant to *11 U.S.C. 303.*

71. In addition, the Respondents' bad faith in this matter is evidenced by the

11

following:

A. Although the Reputed Debtor, Robert Halpin, resides in Illinois, the Respondents filed the within Petition in the Western District of Pennsylvania, which is an improper and inconvenient venue.

B. By filing their Petition in the Western District of Pennsylvania, the Respondents ignored the holding in the case at GD-08-000866, that the Courts of Pennsylvania did not have personal jurisdiction over Robert Halpin as he did not have sufficient minimum contacts with the Commonwealth of Pennsylvania.

C. Significantly, the Respondents did not appeal Judge Lutty's determination that the Courts of Pennsylvania did not have personal jurisdiction over Robert Halpin as he did not have sufficient minimum contacts with the Commonwealth of Pennsylvania.

D. The Respondents completely ignored Judge Lutty's ruling when they filed the within Involuntary Petition in the Western District of Pennsylvania.

E. In Paragraph 6 of the Involuntary Petition, the Respondents incorrectly state that the principal residence of Robert Halpin is 1741 Winchester Avenue, Chicago, Illinois 60622. Contrary to the Respondents' assertion, Robert Halpin does not reside at such address, but rather, resides at 347 Lorraine Street, Glen Ellyn, Illinois 60137.

F. Moreover, what is even more troubling is the fact that Robert Halpin's residence was the subject at issue when Respondents attempted to serve the Citation to Discover Assets in the Cook County Case at No. 08-L-13121. As set forth in Paragraph 55 above, Robert Halpin disclosed his residence to A.G. Cullen and its attorney, Kalson, during those proceedings.  Based upon the same, Robert Halpin believes that the Respondents' listing of the wrong address was not a mistake, but

rather, was an intentional bad faith act undertaken so that they could obtain a default against Robert Halpin.

72. The Involuntary Petition must also be dismissed due to the Respondents' failure to comply with *Bankruptcy Rules 1010* and *7004* governing service of involuntary petitions.

73. *Bankruptcy Rule 7004 (e)* provides that when service is made by mail, the summons and complaint must "be deposited in the mail within 7 days after the summons is issued."

74. Here, as indicated by the record, the summons was issued on May 22, 2018. However, the Respondents did not even attempt to serve the summons until June 19, 2018, well after the 7 day period required by the Rule. Moreover, at the time of the attempted service, the summons, by its very terms, had already expired. Moreover, the Involuntary Petition was filed with this Honorable Court on May 21, 2018. The Respondents waited until June 19, 2018, 29 days later, to even attempt service. Such delay, in and of itself, constitutes bad faith as a matter of law.

75. Based upon all of the above, the Respondents have failed to state a claim for involuntary bankruptcy upon which relief can be granted.

76. Accordingly, the involuntary petition must be dismissed pursuant to *Federal Rule of Bankruptcy Procedure 1011* and *F.R.Civ.P. 12 (b) (6).*

77. Robert Halpin believes that he has valid claims against the Respondents based upon their bad faith conduct as set forth above. However, pursuant to *Bankruptcy Rule 1011 (d),* "a claim against a petitioning creditor may not be inserted in the answer (to an involuntary petition) except for purposes of defeating the petition." Thus, Robert

Halpin cannot assert a claim against the Respondents as part of his opposition to the involuntary petition, but he does not waive such claims and reserves the right to file such claims either within the present Chapter 7 case or outside this case in the event that this Honorable Court dismisses the voluntary petition as requested.

Wherefore, the Movant, Robert Halpin, respectfully requests this Honorable Court to dismiss the Involuntary Petition filed against Robert Halpin.

**B.    Motion for Judgment against the Respondents pursuant to *11 U.S.C. 303 (i)*:**

78.    The Movant hereby incorporates paragraphs 1 through 77 above as if set forth in their entirety.

79.    Pursuant to *11 U.S.C. 303 (i),* if the Court dismisses a petition under this section, other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the Court may grant judgment:

    (1)    against the petitioners and in favor of the debtor for:

        (A)    costs; or

        (B)    a reasonable attorney's fee; or

    (2)    against any petitioner that filed the petition in bad faith for:

        (A)    any damages proximately caused by such filing; or

        (B)    punitive damages.

80.    In the present case, as is more fully set forth above, the Respondents filed the involuntary petition in bad faith.

81.    In addition, the Respondents are liable for damages pursuant to *28 U.S.C. 1927* and/or *Bankruptcy Rule 9011.* See, *In re Tarasi & Tighe,* 88 B.R. 706, 1988 Bankr.

LEXIS 1002 (W.D. Pa. 1988); *In re National Medical Imaging, LLC,* 570 B.R. 147, 2017 Bankr. LEXIS 1828 (E.D. Pa. 2017); *Chaney v. Grigg (In re Grigg),* 568 B.R. 498, 2017 Bankr. LEXIS 1690 (W.D. Pa. 2017).

Wherefore, the Movant, Robert Halpin, respectfully requests this Honorable Court to enter judgment in favor of the Movant and against the Respondents for costs, attorneys' fees, actual damages and punitive damages in an amount to be determined by this Honorable Court.

                                  Respectfully Submitted,

                                  */s/ Robert O Lampl*
ROBERT O LAMPL
PA I.D. #19809
JAMES R. COONEY
PA I.D. #32706
DAVID L. FUCHS
PA I.D. #205694
RYAN J. COONEY
PA I.D. #319213
SY O. LAMPL
PA I.D. #324741
Attorneys for the Movant/Reputed Debtor
223 Fourth Avenue, 4th Fl.
Pittsburgh, PA  15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)
Email:  rlampl@lampllaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

**ROBERT HALPIN,**                        Bankruptcy No. 18-22057-CMB

   Reputed Debtor.                Involuntary Chapter 7

**ROBERT HALPIN,**                        Document No.

   Movant,                             Related to Doc. No. 1

   vs.

**A.G. CULLEN CONSTRUCTION,
INC., PAUL CULLEN, RICHARD
KALSON and BENESCH,
FRIEDLANDER, COPLAN
& ARONOFF, LLP,**

   Respondents.

## **CERTIFICATE OF SERVICE**

I, Robert O Lampl, hereby certify that on the <u>5th</u> day of July, 2018, I served true and correct copies of the within **Motion to Dismiss Involuntary Chapter 7 Petition and for Judgment Against the Petitioning Creditors** upon the following (via Electronic Service):

Office of the U.S. Trustee
970 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

Richard Kalson
Benesch, Friedlander, Coplan & Aronoff, LLP
41 S. High Street
Suite 2600
Columbus, Ohio 43215
rkalson@beneschlaw.com

                                          */s/ Robert O Lampl*  
                                          ROBERT O LAMPL  
                                          PA I.D. #19809  
                                          JAMES R. COONEY  
                                          PA I.D. #32706  
                                          DAVID L. FUCHS  
                                          PA I.D. #205694  
                                          RYAN J. COONEY  
                                          PA I.D. #319213  
                                          SY O. LAMPL  
                                          PA I.D. #324741  
                                          Attorneys for the Movant/Reputed Debtor  
                                          223 Fourth Avenue, 4th Fl.  
                                          Pittsburgh, PA  15222  
                                          (412) 392-0330 (phone)  
                                          (412) 392-0335 (facsimile)  
                                          Email:  rlampl@lampllaw.com